IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:19CR409 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| BRADLEY NELSON, | ) | <u>UNITED STATES'</u> |
| | ) | <u>SENTENCING MEMORANDUM</u> |
| Defendant. | ) | |

The United States of America, by its counsel, Justin E. Herdman, United States Attorney, and Carol M. Skutnik, Assistant United States Attorney, respectfully submits this memorandum setting forth the United States' position regarding the sentencing of Bradley Nelson. For the reasons set forth below and those to be articulated at the sentencing hearing, the United States submits that a sentence of fifteen years is appropriate in this case.

                                                  Respectfully submitted,

                                                  JUSTIN E. HERDMAN
                                                  United States Attorney

By:   <u>/s/ Carol M. Skutnik</u>
       Carol M. Skutnik (OH: 0059704)
       Assistant United States Attorney
       United States Court House
       801 West Superior Avenue, Suite 400
       Cleveland, OH 44113
       (216) 622-3785
       (216) 522-8355 (facsimile)
       Carol.Skutnik@usdoj.gov

I.      **FACTUAL BACKGROUND**

To support its sentencing position, the United States offers the following summary of Defendant Nelson's conduct. The United States also refers the Court to the description included in the Presentence Investigation Report ("PSR"). (R. 16: PSR, PageID 50-51).

A.      THE CURRENT OFFENSE:

1.      Ohio ICAC Discovered Nelson Was Uploading Child Pornography And Referred The Investigation To The Cleveland Division Of Child Exploitation Task Force (CETF), Canton RA.

On May 6, 2019, while connected to the Internet in an online covert capacity, an investigator with the Ohio ICAC was signed into an automated software program which operates on the BitTorrent platform. The software program automates the process of browsing and downloading files from a single source. The downloaded torrents are shared by a user over the BitTorrent network. The software program searches the BitTorrent network for torrents with infohash values of suspected child pornography.

On that date, an individual using an IP address which was later identified as being registered to Bradley Nelson, had and made available for sharing through the Bit Torrent software one file of interest. The Ohio ICAC investigator successfully downloaded three partial files which contained child pornography and described as follows:

> Video Title: 000036.avi: The partially downloaded video depicts a prepubescent female nude from the waist down lying on a bed. The hand of an unidentified subject is manipulating the vagina of the prepubescent female. The video transitions near the end and depicts an adult male placing his penis on the female's vagina. The video is 10 minutes and 52 seconds in length.

> Video Title: 000044.avi: The partially downloaded video depicts a nude early pubescent female in the front seat of a vehicle. The video transitions and depicts the female engaging in oral to genital and genital to genital intercourse with an unidentified male subject. The video is 3 minutes and 1 second in length.

>Video Title: 00056: The partially downloaded video depicts a nude prepubescent female lying on a bed. An adult female is depicted engaging in oral to genital intercourse with the prepubescent female. The adult female also digitally penetrates the vagina of the prepubescent female. The adult female then inserts purple beads into the vagina of the prepubescent female and then uses a vibrating sexual device on the outside of the female's vagina. The original video length is 33 minutes and 21 seconds.

On May 30, 2019, Ohio ICAC reported the above conduct to the Federal Bureau of Investigation, CETF. CETF Task Force Officers ("TFO") interviewed Nelson.

### 2. Nelson's interview with TFO Allen and TFO Anschutz.

On June 27, 2019, Nelson was interviewed by TFO Allen and TFO Anschutz. Nelson reported living at his current location for approximately one year. The residence was rented by his girlfriend's mother and she permitted him to stay there with his girlfriend. Nelson admitted to using Google Chrome and BitTorrent to download child pornography. He said he has the "7zipper" application on his phone that he uses it to unzip the torrent files. Nelson provided TFOs the password to his cellular telephone.

Nelson reported he last viewed and downloaded child pornography one week prior to his interview. He said he downloads files containing child pornography, views the files, masturbates to them, and then deletes the programs. This explained why Nelson had such a small collection of child pornography images despite his extensive downloading behavior.

Nelson also acknowledged his previous attempted rape conviction in relation to a six year old female.

### 3. The Search Warrant

On June 27, 2019, a federal search warrant was executed at Nelson's residence. Several items were seized including:

>LGMP 260 Smart Phone
>Custom Computer Tower

3

>Cell Phone/2 Flash Drives
>2 Flash Drives
>Phone Box, Receipt and SIM Card
>Magazines
>White Samsung Galaxy S III

### 4. The Forensic Examination of Nelson's Devices

On July 2, 2019, TFO Michael Volpe created a forensic report of Nelson's LGMP 260 Smart Phone. TFO Volpe then reviewed the images and videos contained within the report. While conducting the review, TFO Volpe observed the following representative images of child pornography:

> a. Title: 1555411494054: The image depicted a nude prepubescent female on her back on a bed. The female was using her hands to spread open her vagina.
>
> b. Title: 1555411494322: The image depicted a partially nude prepubescent female down with her legs spread while placing a pen against her vagina.

The computer tower seized from Nelson's residence contained one Seagate 1TB hard drive. On July 1, 2019, TFO created a forensic image of that hard drive and later ran a law enforcement program to identify potential child pornography evidence. On July 9, 2019, a review of the images and videos contained within the report revealed one video and seven images depicting child pornography. Below is a sample of the files viewed by the TFO:

> a. Title: f_002cdf; Image ID: 140328-0: The image depicted a prepubescent female nude from the waist down. The female had inserted an unknown, multicolor, item into her vagina.
>
> b. Title: f_0031b0; Image ID: 140633-0: The image depicted a prepubescent female with blonde hair engaging in oral to genital intercourse with a male subject.
>
> c. Title: f_333294; Image ID: 140835-0: A partial video depicted a prepubescent female engaging in oral to genital intercourse with a male subject.

4

On July 10, 2019, TFO created a forensic report from the carved images and videos that were extracted from the Internet Evidence Finder Report in reference to the computer tower seized from Nelson's residence. Additional images viewed are described as follows:

    a.    Image ID: 41996-0: One image depicted a female approximately 10-13 years of age holding the penis of a male subject.

    b.    Image ID: 42923-0: One image depicted a nude prepubescent female with her feet holding the penis of a male subject. The female's legs are spread and she is holding a sexual device in the shape of a penis on her vagina.

    c.    Image ID: 43356-0: One image depicted an adult female subject spreading open the anus of a nude toddler female.

    d.    Image ID: 45894-0: One image depicted a partially nude prepubescent female with her legs spread with an unknown object inserted in her vagina.

    B.    <u>PRIOR CONVICTION</u>:

In 2000, Nelson entered a guilty plea in Portage County Court of Common Pleas, Case No.2000 CR 0277, to one count of Attempted Rape a felony in the second degree. (*See* Attachment A: Order). The remaining charges were dismissed. (*Id.*). The original Indictment charged Nelson with one count of Rape, in violation of O.R.C. 2907.02(A)(1)(b) and (B), a felony in the first degree. (*See* Attachment B: Indictment). As to Count One, the language of the original indictment read:

> Bradley J. Nelson, on or about August 1, 2000, in the County of Portage, State of Ohio [] did: Engage in sexual conduct with Jane Doe (d.o.b. 7/15/95), who is not the spouse of [Nelson], when Jane Doe is less than thirteen years of age; to wit, age 5, whether or not [Nelson] knows the age of Jane Doe.

(*Id.*). The Indictment also charged Nelson with three counts of gross sexual imposition, in violation O.R.C. 2907.05(A)(4) and (B). The language of the original indictment read:

> Bradley J. Nelson, on or about August 1, 2000, in the County of Portage, State of Ohio [] did have sexual contact with Jane Doe (dob: 7/15/95), not the spouse of [Nelson], or cause Jane Doe, not the spouse of [Nelson], to have sexual contact

>with [Nelson], when Jane Doe is less than thirteen years of age, whether or not [Nelson] knows the age of Jane Doe; to wit, age 5.

(*Id.*)

At the change of plea hearing, the State of Ohio amended Count One of the Indictment to Attempted Rape, in violation of O.R.C. §§ 2923.02 and 2907.02(A)(1)(b), a felony of the second degree. (*See* Attachment A: Order). The remaining charges were dismissed. (*Id.*).

Nelson pleaded guilty to attempted rape – an attempt to engage in "sexual conduct" with a minor who was less than thirteen years of age. O.R.C. § 2907.01 defines sexual conduct as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex, and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

The court found the minor victim, Nelson's five year old baby sister, suffered emotional harm and therefore, there was nothing to overcome the presumption of a prison sentence and further – Nelson was not amenable to community control sanctions. (*See* Attachment A: Order). Nelson was sentenced to three years in prison for the offense "Attempted Rape." (*Id.*).

## II.   APPLICABLE LEGAL STANDARDS

### A.   LEGAL PRECEDENT FOR GUIDELINE SENTENCE

The United States' request for a statutorily required minimum sentence of fifteen years in this case is consistent with the law and research highlighting the danger posed by child pornography offenders. Numerous courts have emphatically expressed the wretched consequences of child pornography. In *United States v. Goff*, 501 F.3d 250, 259 (3rd Cir. 2007), the Third Circuit noted:

> Children are exploited, molested, and raped for the prurient pleasure of [defendant] and others who support suppliers of child pornography. These small victims may rank as "no one else" in [defendant]'s mind, but they do indeed exist outside his mind. Their injuries and the taking of their innocence are far too real. There is nothing 'casual' or theoretical about the scars they will bear from being abused for [defendant]'s advantage.

The defendant in *United States v. MacEwan*, 445 F.3d 237, 249-50 (3rd Cir. 2006), tried to downplay his receipt of child pornography by claiming that he was not a violent offender or a trafficker of guns or drugs. The Third Circuit was not persuaded, reasoning as follows:

> Congress found that "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." Moreover, Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child pornography, because the mere "existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." Furthermore, "it inflames the desires of . . . pedophiles . . . who prey on children, thereby increasing the creation of and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials."

*Id.* (citations omitted); *see also United States v. Duhon*, 440 F.3d 711, 718-20 (5th Cir. 2006); *United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir. 2005); *United States v. Grosenheider*, 200 F.3d 321, 332-34 (5th Cir. 2000).

This Court in *United States v. Cunningham*, 680 F. Supp. 2d 844, 847 (N.D. Ohio 2010), *affirmed* 669 F.3d 723 (6th Cir. 2012), imposed a guideline sentence on a child pornography defendant. In denying the defendant's challenge to the legitimacy of the child pornography guideline, the same one that applies to Nelson, the court reasoned:

> There can be no keener revelation of a society's soul than the way in which it treats its children. Given the current statistics surrounding child pornography, we are living in a country that is losing its soul.

> Child pornography is a vile, heinous crime. Mention the term to your average American and he responds with immediate disgust and a sense of unease. However, once it enters the legal system, child pornography undergoes sterilization. The sterilization goes far beyond properly removing emotion from sentencing decisions.

7

Images are described in the most clinical sense.  Victims all too often remain nameless.  The only emotions on display are those of defendants, sorry that their actions were discovered by law enforcement.

In *United States v. Norris*, 159 F.3d 926, 929-30 (5th Cir. 1998), *cert. denied*, 526 U.S. 1010 (1999), the defendant claimed that children depicted in child pornography are not victimized by receipt.  Rather, the defendant claimed that the victimization occurred solely when the child pornography was produced.  *Id*.  The Fifth Circuit thoroughly repudiated that argument as follows:

> Norris takes an unrealistically narrow view of the scope of harms experienced by the child victims of the child pornography industry. Unfortunately, the "victimization" of the children involved does not end when the pornographer's camera is put away.  The consumer, or end recipient, of pornographic materials may be considered to be causing the children depicted in these materials to suffer as a result of his actions in at least three ways.
>
> *First*, the simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials. "The materials produced are a permanent record of the children's participation and *the harm to the child is exacerbated by their circulation*."  . . . The consumer who "merely" or "passively" receives or possesses child pornography directly contributes to this continuing victimization.
>
> *Second*, the mere existence of child pornography represents an invasion of the privacy of the child depicted.  Both the Supreme Court and Congress have explicitly acknowledged that the child victims of child pornography are directly harmed by this despicable intrusion on the lives of the young and the innocent. . . . The recipient of child pornography obviously perpetuates the existence of the images received, and therefore the recipient may be considered to be invading the privacy of the children depicted, directly victimizing these children.
>
> *Third*, the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials.  As Congress put it in explicit factual findings:
>
>> The existence of and traffic in child pornographic images . . . inflames the desires of child molesters, pedophiles and child pornographers, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials[.]

> Plainly, Congress has described a chicken-and-egg scenario in which it would be impossible to determine whether child pornographers or consumers of child pornography were initially responsible for the creation of the child pornography industry. The underlying point, however, is that there is no sense in distinguishing, as Norris has done, between the producers and consumers of child pornography. Neither could exist without the other. The consumers of child pornography therefore victimize the children depicted in child pornography by enabling and supporting the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects.

Norris, 159 F.3d at 929-31 (emphasis in original) (citations omitted).

  B.  NELSON'S OBJECTIONS TO THE GUIDELINES CALCULATION

On November 27, 2019, Nelson submitted two objections to the PSR. (R. 16: PSR at PageID 65). First, Nelson argues the four-level enhancement for sadistic/masochistic conduct does not apply. (*Id.*). Second, Nelson argues his prior conviction for attempted rape does not qualify for an enhanced penalty under the statute. (*Id.*). Both of Nelson's arguments fail.

  1.  Four-Level Enhancement Under 18 U.S.C. § 2G2.2(b)(4)

18 U.S.C. § 2G2.2(b)(4) once covered only material that depicted "sadistic or masochistic conduct or other depictions of violence." *United States v. Nichols*, 2019 U.S. App. LEXIS 34649 *3 (6th Cir. 2019). In 2016, the Sentencing Commission amended that provision to include material that depicted "sexual abuse or exploitation of an infant or toddler." *Id*. The provision now reads: "If the offense involved material that portrays (A) sadistic or masochistic conduct or other depictions of violence; or (B) sexual abuse or exploitation of an infant or toddler, increase by 4 levels." *Id*. at *4. The PSR references at least one image of an adult female spreading open the anus of a nude toddler female and since that image portrays sexual abuse of a toddler, the enhancement is properly applied. (R. 16: PSR at PageID 65).

In addition, Nelson possessed at least one video (000044.avi) which depicted a nude early pubescent female in the front seat of a vehicle. The video transitions and depicts the female

engaging in oral to genital and genital to genital intercourse with an unidentified male subject. The Sixth Circuit held in *United States v. Fuller*, 77 Fed. Appx. 371 (6th Cir. 2003) that because the Guidelines do not define sadistic or masochistic, courts must look to the common meaning of those terms to determine their application. *Id.* at 383. Accordingly, the Sixth Circuit has found that "the enhancement is warranted when the offense involves the depiction of a sexual act that is 'likely to cause pain in one so young.'" *Id.* at 384 (quoting *United States v. Lyckman*¸235 F.3d 234, 238-39 (5th Cir. 2000)). Penetrative sex between adults and prepubescent children is indeed, inherently sadistic. *United States v. Quinn*, 257 Fed. Appx. 864, 867 (6th Cir. 2007).

Nelson also possessed at least one video and two images that depicted vaginal penetration of prepubescent minor females. "[I]mages displaying vaginal or anal penetration of a prepubescent minor by either an adult male or a foreign object is likely to be painful and constitutes sadistic conduct that justifies the enhancement." *Fuller*, 77 Fed. Appx. 371, 384 (6th Cir. 2003). Indeed, digital penetration and the insertion of purple beads into a minor females vagina (Video 00056); insertion of an unknown, multicolor item into a minor female's vagina (Image ID 140328-0); and insertion of an unknown object into a minor female's vagina (ImageID 458984-0) meets the definition of sadistic and masochistic conduct and a four-level enhancement is properly applied. Nelson's objection does not dispute that the pictures found on his electronic devices include images that portrayed sexual penetration of prepubescent girls that would likely be painful. Nor does Nelson present a legal controversy about the definition of sadistic conduct for purpose of the enhancement. Nelson's objection is without merit.

    2.    <u>Nelson's Prior Conviction</u>

Nelson argues his prior conviction for "attempted" rape does not qualify as an enhancement under the statute. (R. 16: PSR at PageID 65). When deciding whether a prior

10

state-law conviction triggers an enhanced sentence under §§ 2252(b) or 2252A(b), the court looks first to the "fact of conviction and the statutory definition of the prior offense." *Taylor v. United States*, 495 U.S. 575, 602 (1990); *United States v. McGrattan*, 504 F.3d 508, 611 (6th Cir. 2007). If necessary, the court may also consider "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between the judge and the defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information. *Shepard v. United States*, 544 U.S. 13, 26 (2005); *McGrattan*, 504 F.3d at 611.

In order to determine whether Nelson's state-court conviction triggers the sentence enhancements set for in § 2252(b), the court must "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime – i.e., the offense as commonly understood." *Descamps v. United States*, 570 U.S. 254, 257 (2013). The Supreme Court has approved two approaches to be used in conducting this comparison. The first is the categorical approach, under which a prior conviction qualifies only if the elements of the statute are the same as or narrower than the elements of the generic offense. *See Taylor v. United States*, 495 U.S. 575 (1990). The second is known as the modified categorical approach and is used only when a prior conviction stems from the violation of what is referred to as a "divisible statute." *See Shepard v. United States*, 544 U.S. 13 (2005). A divisible statute "sets out one or more elements of the offense in the alternative . . . ." *Descamps*, 570 U.S. 254. Here, the court employs the categorical approach.

Nelson argues his 2000 conviction does not fall within § 2252(b)(1) because his guilty plea was to an attempt charge and not the crime of rape itself. However, the language of § 2252(b)(1) states otherwise. "Whoever violates, or attempts or conspires to violate [18 U.S.C.

11

§ 2252(a)(2)] [and] if such person has a prior conviction under . . . Chapter 109A . . . or under any laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward . . . such person shall be fined under this title and imprisoned for not less than 15 years nor more than 40 years. 18 U.S.C. § 2252(b)(1). Notably, § 2241(c) Aggravated Sexual Abuse With Children states that "whoever knowingly engages in a sexual act with another person who has not attained the age of 12 years . . . or attempts to do so . . . shall be fined under this title . . . ."

Indeed, Nelson pleaded guilty to attempted rape – an attempt to engage in "sexual conduct" with a minor who was less than thirteen years of age. O.R.C. 2907.01 defines sexual conduct as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex, and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

By comparison, the term "sexual act" as defined in 18 U.S.C. § 2246(2)(A)-(D) reflects the language of O.R.C. 2907.01. 18 U.S.C. § 2246(2)(A)-(D) reads: "the term 'sexual act' means – (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight; (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or, (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse,

12

humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." *See United States v. Dattillo*, 442 Fed. Appx. 187, 191 (6th Cir. 2011) (Comparing the term "sexual contact" which is nearly identical under federal law (18 U.S.C. § 2246(3)) and Ohio Law (O.R.C. § 2907.01(b))).

In the instant matter, Nelson pleaded guilty to Distribution of Visual Depictions of Real Minors Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). (R. 16: PSR: PageID 48). Nelson faces 15 to 40 years imprisonment and a $250,000 fine. (*Id.*). In accordance with 18 U.S.C. § 2252(b)(1) any person found guilty of certain activities relating to material involving the sexual exploitation of minors and who has a prior conviction under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward . . . shall be imprisoned for not less than 15 years nor more than 40 years. 18 U.S.C. § 2252(b)(1).

### III. APPLICATION OF § 3553(a) FACTORS

#### A. NATURE AND CIRCUMSTANCES OF THE OFFENSE

The Government refers to the Statement of Facts section and the Defendant's PSR for description of the nature and circumstances of the offenses in the case at bar:

#### B. HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Based on his history, the Court should have serious concerns for the safety of the community and the potential for Nelson's likelihood for recidivism. Congress has repeatedly recognized that recidivism rates are particularly high for sex offenders. Blaisdell, Krista, Note, *Protecting the Playgrounds of the Twenty-First Century: Analyzing Computer and Internet Restrictions for Internet Sex Offenders*, 43 Val. U.L. Rev. 1155, 1192, n. 150 (2009) (compiling Congressional statements regarding the high risk of recidivism among child sex offenders).

Courts have recognized this as well. *United States v. Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008) ("child sex offenders have appalling rates of recidivism and their crimes are under-reported"); *United States v. Allison*, 447 F.3d 402, 405-06 (5th Cir. 2006) (Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders).

Defendant Nelson's alleged diagnosis of depression and anxiety and his statement that he continues to suffer from depression, anxiety, mood swings and anger issues (R. 16: PSR, PageID 56) should not result in a variance in this case. Instead, it should cause this Court grave concern regarding Nelson's ability to effectively tackle his mental health issues and address his sexual attraction to children long term. Likewise, Defendant Nelson's statements about alleged sexual abuse as a child (R. 16: PSR, PageID 55) should bear no weight in the court's sentencing determination.

1. Nelson's alleged victimization

Nelson states he was sexually abused as a child at the hands of two family members. To the extent Nelson will argue that the abuse may have contributed to the attempted rape of his sister or his consumption of child-pornography via the internet – research does not support his claim. In fact, studies pertaining to this issue have found that the widespread belief that sexually abused children are uniquely at risk to become sex offenders is not supported by prospective empirical evidence. Widom, C. and Massey, C., "A Prospective Examination of Whether Childhood Sexual Abuse Predicts Subsequent Sexual Offending Online Only" in JAMA Pediatr. 2015.[1]

---

[1] Attached as Exhibit C.

"The victim-offender cycle in male sexual abuse has been popularized as an explanation of why some males sexually offend.  However, there are serious limitations to this explanation . . . "  Lambie, Ian *et al.*, "Resiliency in the victim-offender cycle in male sexual abuse" in Sex Abuse: A Journal of Research and Treatment 14(1) (2002) at 43. *See also* Glasser, M. *et al.*, "Cycle of child sexual abuse: links between being a victim and becoming a perpetrator" in The British Journal of Psychiatry 179 (2001) at 488 (noting that "the data do not provide strong support for a cycle of sexual substantial proportion of male perpetrators"); and Briggs, F. and R. Hawkins, "A Comparison of the Childhood Experiences of Convicted Male Child Molesters and Men who were Sexually Abused in Childhood and Claimed to be Nonoffenders" in Child Abuse & Neglect 20(3) (1996) at 230 (concluding that "[S]exual abuse at particular ages and frequency of abuse do not of themselves necessarily lead to an increased likelihood of perpetuating abuse across generations.").

Moreover, with respect to studies which have suggested that "prior victimization may have some effect in a minority of perpetrators . . . [a]nother possibility is that some sexual perpetrators may feign sexual victimization in order to gain sympathy, preferential treatment, or therapy." Glasser, M. et al., "Cycle of child sexual abuse: links between being a victim and becoming a perpetrator" in The British Journal of Psychiatry 179 (2001) at 488. *See also* Hall, R.C.W., "A Profile of Pedophilia: Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues" in Mayo Clinic Proceedings 82(4) (2007) at 464 ("There is also legitimate concern regarding the validity of many of the self-reports of pedophiles who claim to have been abused as children themselves. These statements are often made in a legal or group treatment setting, in which pedophiles may be trying to mitigate their sentence or gain sympathy for their behavior."); Haywood, Thomas et al., "Cycle of Abuse and Psychopathology in Cleric

and Noncleric Molesters of Children and Adolescents" in Child Abuse & Neglect 20(12) (1996) at 1234 ("Studies into prevalence of childhood sexual abuse among sex offenders have produced mixed results with 8% to 60% of child molesters reporting having been sexually abused as a child. Variability in prevalence rates across studies may be due in part to differing motivations on the part of subjects to give self-serving histories. . .") (citations omitted); and Briggs, F. and R. Hawkins, "A Comparison of the Childhood Experiences of Convicted Male Child Molesters and Men who were Sexually Abused in Childhood and Claimed to be Nonoffenders" in Child Abuse & Neglect 20(3) (1996) at 232 ("Perpetrators may lie about their actions or attempt to excuse their behavior by pointing to their own victimization as children. . . Excuse-making may be more prevalent in settings where such behavior may be useful, such as in the early stages of therapy (before learning that excuse making is not acceptable) or during the trial process (perhaps under the guidance of enthusiastic defense lawyers).").

Indeed, "when verified by polygraph . . . the percentage of offenders who experienced sexual victimization in their own lives drops significantly." Hindman, Jan et al., "Shedding Light on the Histories of Sex Offenders Using Clinical Polygraphy" in The Sexual Predator (vol. IV) (2010) at 20-5. See also Hindman, Jan et al., "Polygraph Testing Leads to Better Understanding Adult and Juvenile Sex Offenders" in Federal Probation 65(3) (2001) at 8.

  C. <u>NEED FOR THE SENTENCE IMPOSED TO REFLECT SERIOUSNESS OF OFFENSE, PROMOTE RESPECT FORT HE LAW, AND PROVIDE JUST PUNISHMENT</u>

In the even Nelson argues at sentencing that a sentence below the statutory minimum of fifteen years would accomplish the goals of sentencing and would not diminish the seriousness of his crime, the government would disagree. In *Bistline,* the Sixth Circuit noted a reasonable sentence must reflect the seriousness of the offense or provide for any general or specific

deterrence. *United States v. Bistline*, 665 F.3d 767-68 (6th Cir. 2012). A sentence below the statutory minimum of fifteen years would offend the seriousness of the offense and the impact on its victims. Congress has plainly indicated "[e]very instance of viewing images of child pornography represents a . . . repetition of their abuse." 18 U.S.C. § 2251 (Historical and Statutory Notes: Child Pornography Prevention of 2006, Pub. L. No. 109-248, Title V, § 501, July 27, 2006, 120 Stat. 587, 623 (2006)).  The words of Congress and many courts echo the victims themselves.  For many victims, the downloading of images is just as traumatic as the initial act of abuse.  These victims express embarrassment of being depicted in these extremely vulnerable situations.  They also express fear of being watched and subsequently recognized by people like Nelson who fixate on videos and images of them.

      Defendant committed child exploitation offenses in the comfort and privacy of his own home, and he alone is responsible for not seeking therapy and working to arrest his sexual attraction to children.  Therefore, the government submits that a sentence of fifteen years would reflect the nature of the offense and the need to protect the community.

      A.      <u>Need for Sentence to Afford Adequate Deterrence</u>

      Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *United States v. Irey*, 612 F.3d 1160, 1206 (citing *United States v. Ferber*, 458 U.S. 747, 760 (1982) (The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product); *Osborne v. Ohio*, 495 U.S. 103, 109-10 (1990) (It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand); *United States v.*

*Goff,* 501 F.3d 250, 261 (3rd Cir. 2007) (Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing.); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) (The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it. Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children.). In *United States v. Goldberg,* 491 F.3d 668, 672 (7th Cir. 2007) (internal citations omitted), the court opined:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded—both consumed himself and disseminated to others.  The greater the customer demand for child pornography, the more that will be produced.  Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor.  The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

In fact, the *Bistline* Court reversed a district court that failed to see any importance in general deterrence. *See United States v. Bistline*, 665 F.3d 758, 767 (6th Cir. 2012). The district court stated, "[g]eneral deterrence . . . will have little [if] anything to do with this particular case." *Id.*  The Sixth Circuit found "that [the district court's] statement is inexplicable, and in any event conflicts with our statement that '[g]eneral deterrence is crucial in the child pornography context[.]'" *Id.*  (citing *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010)).

Despite the fact that Nelson and others who have an overwhelming desire for young children may not be deterred even if the sentence for the crimes was life, it is also true that others would certainly not be deterred if Nelson received a low sentence. These offenders do talk to each other via the Internet and they are concerned enough about law enforcement that they

encrypt their hard drives and seek foreign websites in an effort to prevent detection. There is much to be gained by a significant sentence—increased safety for our children.

IV. **CONCLUSION**

For these reasons and those to be articulated at the sentencing hearing, the United States respectfully requests that the Court impose a term of imprisonment at the statutory minimum of fifteen years.

Respectfully submitted,

JUSTIN E. HERDMAN
Acting United States Attorney

By: /s/ Carol M. Skutnik
Carol M. Skutnik (OH: 0059704)
Assistant U.S. Attorney
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113
Tel. No. (216) 622-3785
E-mail: carol.skutnik@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on this 10th day of December 2019, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

        /s/ Carol M. Skutnik
        Carol M. Skutnik
        Assistant U.S. Attorney